1

DANIELLE J. MOSS, *PRO HAC VICE PENDING*
  dmoss@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:   212.351.4035

2

3

4

5

MEGAN COONEY, SBN 295174
  mcooney@gibsondunn.com
LAUREN M. FISCHER, SBN 318625
  lfischer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

6

7

8

9

10

Attorneys for Defendant
PELOTON INTERACTIVE, INC.

11

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14 MARK COHEN, as an individual and on behalf of all others similarly situated, | CASE NO.  2:22-cv-01425 |
| 15 | **DEFENDANT PELOTON** |
| Plaintiff, | **INTERACTIVE, INC.'S NOTICE OF** |
| 16 | **REMOVAL OF CLASS ACTION** |
| v. | (Los Angeles County Superior Court Case |
| 17 | No. 22STCV00201) |
| 18 PELOTON INTERACTIVE, INC., a Delaware corporation; and Does 1 | Action Filed:     January 3, 2022 |
| 19 through 50, inclusive, | |
| 20 Defendants. | |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      TIMELINESS OF REMOVAL ............................................................................. 1

II.     SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL........... 2

        A.      The Proposed Class Consists of More than 100 Members ....................... 5

        B.      Peloton and Plaintiff Are Not Citizens of the Same State ........................ 6

        C.      The Amount in Controversy Exceeds $5 Million ..................................... 7

                1.      Plaintiff's Allegations Regarding Waiting Time Penalties
                        Place More than $2.9 Million in Controversy ................................. 9

                2.      Plaintiff's Claim for Alleged Violation of Labor Code
                        Section 226 Places Another $1.4 Million in Controversy ............. 11

                3.      Plaintiff's Allegations Regarding Meal and Rest Periods
                        Places Another $694,411.20 in Controversy ................................. 13

                4.      Plaintiff's Request for Attorneys' Fees Places an Additional
                        $1.2 Million in Controversy............................................................ 16

                5.      Just Four of Plaintiff's Nine Causes of Action, Including
                        Attorneys' Fees, Places More than $6.3 Million in
                        Controversy .................................................................................... 17

III.    THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ........... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION

1

## TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

4

CASES

5

*Arias v. Residence Inn by Marriott*,
936 F.3d 920 (9th Cir. 2019) ........................................................................... 7, 8, 16

6

7

*Avila v. Kiewit Corp.*,
789 F. App'x 32 (9th Cir. 2019) ................................................................................ 15

8

9

*Ayala v. Cox Auto., Inc.*,
2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ............................................................. 6

10

11

*Barcia v. Contain-A-Way, Inc.*,
2009 WL 587844 (S.D. Cal. Mar. 6, 2009) .............................................................. 16

12

13

*Branch v. PM Realty Grp., L.P.*,
647 F. App'x 743 (9th Cir. 2016) ............................................................................. 15

14

15

*Campbell v. Vitran Exp., Inc.*,
471 F. App'x 646 (9th Cir. 2012) ............................................................................... 7

16

17

*Crummie v. CertifiedSafety, Inc.*,
2017 WL 4544747 (N.D. Cal. Oct. 11, 2017) .......................................................... 10

18

*Danielsson v. Blood Ctrs. of Pac.*,
2019 WL 7290476 (N.D. Cal. Dec. 30, 2019) ......................................................... 15

19

20

*Dart Cherokee Basin Op. Co. v. Owens*,
574 U.S. 81 (2014).................................................................................................... 7, 8

21

22

*De Bedoy v. ATN Window & Door Corp.*,
2016 WL 7647203 (Cal. Super.) .............................................................................. 16

23

24

*Ferra v. Loews Hollywood Hotel, LLC*,
11 Cal. 5th 858 (2021) ............................................................................................. 13

25

26

*Garza v. Brinderson Constructors, Inc.*,
178 F. Supp. 3d 906 (N.D. Cal. 2016)..................................................................... 14

27

28

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................................. 16

Gibson, Dunn &
Crutcher LLP

iii

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)..................................................................................... 6

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006) ..................................................................... 7

*Kantor v. Wellesley Galleries, Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) ................................................................... 6

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
    199 F. Supp. 2d 993 (C.D. Cal. 2002) ...................................................... 7

*Korn v. Polo Ralph Lauren Corp.*,
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................... 7

*LaCross v. Knight Transp. Inc.*,
    775 F.3d 1200 (9th Cir. 2015) ................................................................... 7

*Lewis v. Verizon Commc'ns, Inc.*,
    627 F.3d 395 (9th Cir. 2010) ..................................................................... 8

*Mackall v. Healthsource Glob. Staffing, Inc.*,
    2016 WL 4579099 (N.D. Cal. Sept. 2, 2016)........................................... 14

*Mamika v. Barca*,
    68 Cal. App. 4th 487 (1998) ...................................................................... 9

*Marentes v. Key Energy Servs. Cal., Inc.*,
    2015 WL 756516 (E.D. Cal. Feb. 23, 2015) ........................................... 10

*Mays v. Wal-Mart Stores, Inc.*,
    804 F. App'x 641 (9th Cir. 2020)............................................................. 12

*Mejia v. DHL Express (USA), Inc.*,
    2015 WL 2452755 (C.D. Cal. May 21, 2015)......................................... 12

*Murphy v. Kenneth Cole Prods., Inc.*,
    40 Cal. 4th 1094 (2007)............................................................................ 14

*Pineda v. Bank of Am., N.A.*,
    50 Cal. 4th 1389 (2010)............................................................................. 9

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

4

*Rippee v. Boston Mkt. Corp.*,
    408 F. Supp. 2d 982 (S.D. Cal. 2005) ........................................................ 7

5

6

*Salter v. Quality Carriers, Inc.*,
    974 F.3d 959 (9th Cir. 2020) ............................................................... 7, 8

7

8

*Soto v. Tech Packaging, Inc.*,
    2019 WL 6492245 (C.D. Cal. Dec. 3, 2019)............................................ 12

9

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013)................................................................................. 8

10

11

*State Farm Mut. Auto Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ................................................................... 6

12

13

*Tajonar v. Echosphere, L.L.C.*,
    2015 WL 4064642 (S.D. Cal. July 2, 2015)............................................ 10

14

15

*Vasquez v. Randstad US, L.P.*,
    2018 WL 327451 (N.D. Cal. Jan. 9, 2018)............................................... 15

16

**STATUTES**

17

28 U.S.C. § 84(c) ....................................................................................... 18

18

28 U.S.C. § 1332(c)(1)............................................................................... 6, 7

19

20

28 U.S.C. § 1332(d) ............................................................................*passim*

21

28 U.S.C. § 1441....................................................................................2, 5, 18

22

28 U.S.C. § 1446....................................................................................1, 18, 19

23

28 U.S.C. § 1453....................................................................................1, 2, 18

24

28 U.S.C. § 1711 ........................................................................................ 1

25

Cal. Civ. Proc. Code § 340(a) ................................................................. 12

26

Cal. Civ. Proc. Code § 338(a) ............................................................... 9, 14

27

Cal. Civ. Proc. Code § 382 ....................................................................... 2

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF REMOVAL OF CLASS ACTION

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Lab. Code § 201 ........................................................... 9, 10

Cal. Lab. Code § 202 ........................................................... 9, 10

Cal. Lab. Code § 203 ........................................................... 9, 10

Cal. Lab. Code § 226 ........................................................ 11, 12, 13

Cal. Lab. Code § 226.7 ............................................................. 13

Class Action Fairness Act of 2005 .......................................... *passim*

## REGULATIONS

Cal. Code Regs. tit. 8, § 13520 ..................................................... 9

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE CLERK FOR THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF MARK COHEN, AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant Peloton Interactive, Inc. ("Peloton" or "Defendant") hereby removes to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. 22STCV00201 in Los Angeles County Superior Court, State of California. Removal is proper on the following grounds:

## I.    TIMELINESS OF REMOVAL

1.    Plaintiff Mark Cohen ("Plaintiff") filed a putative Class Action Complaint against Peloton in Los Angeles County Superior Court, State of California, Case No. 22STCV00201, on January 3, 2022.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Case Cover Sheet Addendum, (e) Notice of Posting Jury Fees, (f) First Amended Class Action Complaint, (g) Alternative Dispute Resolution (ADR) Information Package, (h) Notice of Service of Process Transmittal, (i) Proof of Service of Summons, (j) Initial Status Conference Order (Complex Litigation Program), (k) Minute Court Order Re: Complex Designation and Initial Status Conference, (l) Certificate of Mailing for Minute Order Re: Complex Designation and Initial Status Conference, (m) Peloton's Answer to Plaintiff's First Amended Class Action Complaint, and (n) Filing Confirmation of Peloton's Answer to Plaintiff's First Amended Class Action Complaint are attached as Exhibits A–N to the Declaration of Megan Cooney ("Cooney Decl.") filed concurrently herewith.

2.    According to the Notice of Service of Process Transmittal, Plaintiff served Peloton through its registered agent for service of process on February 1, 2022.  *See* Cooney Decl. ¶ 9, Ex. H.  This notice of removal is timely because it is filed within 30 days after service was completed.  28 U.S.C. § 1446(b).

## II.     SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Peloton pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.     CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See id.* § 1332(d)(1)(B); *see also* Cooney Decl., Ex. F, First Amended Class Action Complaint ("Compl.") ¶ 19.

5.     In his First Amended Class Action Complaint, Plaintiff alleges nine causes of action against Peloton:  (1) Failure to Authorize or Permit Meal Periods or Timely Meal Periods in Violation of Labor Code sections 226.7 and 512; (2) Failure to Authorize or Permit Rest Periods in Violation of Labor Code section 226.7; (3) Failure to Provide Complete and Accurate Wage Statements in Violation of Labor Code section 226; (4) Failure to Pay All Overtime and Minimum Wages in Violation of Labor Code sections 510, 558, and 1194; (5) Failure to Pay All Wages for All Time Worked, Including Minimum Wage, in Violation of Labor Code sections 204, 218, 1194, 1197, and 1198; (6) Failure to Pay All Accrued and Vested Vacation/PTO Wages in Violation of Labor Code section 227.3; (7) Failure to Adequately Indemnify Employees for Employment-Related Losses/Expenditures in Violation of Labor Code section 2802; (8) Failure to Timely Pay All Earned Wages and Final Paychecks Due at the Time of Separation of Employment in Violation of Labor Code sections 201, 202, and 203; and (9) Unfair Business Practices in Violation of Business & Professions Code section 17200, *et seq. See* Cooney Decl., Ex. F, Compl. ¶¶ 31–93.

6.      Plaintiff asks the Court for "an order certifying the proposed Class" and "an order appointing Plaintiff as the representative of the Class[.]"  *Id.*, Compl., Prayer for Relief.  He seeks to represent nine classes of individuals.  Each of the putative classes are defined as follows:

(1)  **Wage Statement Class**:  "All current and former California hourly, non-exempt employees of Peloton who received one or more itemized wage statements at any time between four years prior to filing this action and through the present."

(2)  **Rest Break Class**:  "All current and former California hourly, non-exempt employees of Peloton who worked 3.5 hours or more in one shift at any time between four years prior to filing this action and through the present."

(3)  **Meal Break Class**:  "All current and former California hourly, non-exempt employees of Peloton who worked more than 5 hours in one shift at any time between four years prior to filing this action and through the present."

(4)  **Overtime Class**:  "All current and former California hourly, non-exempt employees of Peloton who worked more than 8 hours a day in a workday or 40 hours in a workweek at any time four years prior to filing this action and through the present."

(5)  **Unpaid Wage Class**:  "All current and former hourly, non-exempt employees employed by Peloton in California at any time between four years prior to filing this action and through the present and who were not paid an hourly wage at their regular rate of pay, including minimum wages, for all time they were subject to Peloton's control."

(6)  **Regular Rate Class**:  "All current and former hourly non-exempt employees employed by Peloton in California at any time between four years prior to filing this action and through the present and who earned

additional remuneration during pay periods the employees worked in excess of eight hours in a workday or 40 hours in a workweek."

(7) **Indemnification Class**:  "All current and former hourly, non-exempt employees employed by Peloton in California at any time between four years prior to filing this action and through the present and who did not receive indemnification to reimburse them for the necessary expenditures incurred in the discharge of their duty, including their driving costs, such as mileage reimbursement for distance traveled and any tolls paid for driving their personal vehicle, and their monthly cell phone expenses."

(8) **Vacation Wages Class**:  "All current and former hourly, non-exempt employees employed by Peloton in California at any time between four years prior to filing this action and through the present and who did not properly accrue vacation/personal time off and/or accrued vacation time/personal time off and were not paid by Peloton for all wages due for vested vacation time/personal time off upon separation of employment."

(9) **Waiting Time Class**:  "All current and former hourly, non-exempt employees employed by Peloton in California at any time between four years prior to filing this action and through the present and who were not timely paid all earned wages and final paychecks due at time of separation of employment from Peloton."

*Id.*, Compl. ¶¶ 19 (A–I).

7.     Among other things, Plaintiff alleges that putative class members are entitled to statutory penalties for allegedly non-compliant rest periods, late payment of wages and inaccurate wage statements, restitution, interest, and attorneys' fees and costs. *See id.*, Compl., Prayer for Relief.

8.     Removal of a class action under CAFA is proper if: (1) there are at least

100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

9.    Peloton denies any liability in this case, both as to Plaintiff's individual claims and as to the claims he seeks to pursue on behalf of the putative class. Peloton also intends to oppose class certification on multiple grounds, including that class treatment is inappropriate under these circumstances in part because there are many material differences between the experiences of Plaintiff and the putative class members he seeks to represent, as well as amongst the putative class members. Peloton expressly reserves all rights to oppose class certification and contest the merits of all claims asserted in the First Amended Class Action Complaint. However, for purposes of the jurisdictional requirements for removal *only*, the allegations in Plaintiff's First Amended Class Action Complaint identify a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million, as demonstrated below. *See* 28 U.S.C. § 1332(d)(6).

**A.    The Proposed Class Consists of More than 100 Members**

10.    Based on Plaintiff's allegations, this action satisfies CAFA's requirement that the putative class contains at least 100 members. *See id.* § 1332(d)(5)(B).

11.    Each of Plaintiff's proposed classes consists of "[a]ll current and former California hourly, non-exempt employees of Peloton" or "current and former hourly non-exempt employees employed by Peloton in California" "at any time between four years prior to filing this action and through the present[.]" Cooney Decl., Ex. F, Compl. ¶¶ 19 (A–I). According to Peloton's records, there were approximately 1,065 full-time, non-exempt individuals employed by Peloton in California between January 3, 2019 and January 3, 2022. Declaration of Christine Pinkston ("Pinkston Decl.") ¶ 4(b). This number represents only a portion of Plaintiff's proposed putative class. This putative class size estimate is conservative because (a) it excludes all part-time employees; and

(b) it does not include non-exempt employees who only worked for Peloton in California between January 3, 2018 and January 3, 2019, or after January 3, 2022.

12.    Accordingly, while Peloton denies that class treatment is permissible or appropriate, the proposed class consists of over 100 members.

**B.    Peloton and Plaintiff Are Not Citizens of the Same State**

13.    Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

14.    A person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff alleges that he "is a resident of Los Angeles, California" who was employed by Peloton "as a sales associate in Los Angeles, California." Cooney Decl., Ex. F, Compl. ¶ 11. Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. *See Ayala*, 2016 WL 6561284, at *4.

15.    A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). Peloton is a Delaware corporation with its principal place of business in New York. Pinkston Decl. ¶ 3.

16.    The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. § 1332(c)(1) and (d)(2)(A) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Peloton's headquarters, which are located in New York, constitute its "nerve center" under the test adopted in *Hertz* because Peloton's high-level officers oversee the corporation's

activities from that state.  *See* Pinkston Decl. ¶ 3.  As such, Peloton is a citizen of New York, in addition to Delaware, the place where it is incorporated.  *See* 28 U.S.C. § 1332(c)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

17.    Accordingly, Plaintiff and Peloton are citizens of different states and CAFA's minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

**C.    The Amount in Controversy Exceeds $5 Million**

18.    CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs.  *Id.* § 1332(d)(2).  In calculating the amount in controversy, a court must aggregate the claims of all individual class members.  *Id.* § 1332(d)(6).

19.    In assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).  Further, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy" for CAFA purposes.  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

20.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014).  To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015).

"An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925; *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal quotation marks and citations omitted)). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

21.    Accordingly, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. Importantly, plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

22.    Peloton reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings," requires the removing defendant to "support her jurisdictional allegations with competent proof" (internal quotation marks omitted)). "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

23.    Although Peloton denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal *only*, if Plaintiff were to prevail on every claim and allegation in his First Amended Class Action Complaint

on behalf of the putative class, the requested monetary recovery would exceed $5 million.

> **1.** **Plaintiff's Allegations Regarding Waiting Time Penalties Place More than $2.9 Million in Controversy**

24.     Plaintiff's claim for waiting time penalties pursuant to Labor Code section 203 puts at least $2.9 million in controversy.

25.     Plaintiff alleges that he and other putative class members who ended their employment with Peloton during the three-year period prior to filing this action— January 3, 2019 to January 3, 2022—are entitled to recovery of "waiting time penalties" pursuant to Labor Code section 203.[1]  *See* Cooney Decl., Ex. F, Compl. ¶¶ 19 (I), 88.

26.     If an employer fails to pay all wages due to an employee at the time of termination, as required by Labor Code section 201, or within 72 hours after resignation, as required by Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days.  Cal. Lab. Code § 203.  An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed.  Cal. Code Regs. tit. 8, § 13520.  Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful.  *See* Cal. Lab. Code § 203.  "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due."  Cal. Code Regs., tit. 8, § 13520.

27.     To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages.  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 489, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day he or she

---

[1]  The statute of limitations for an action under Labor Code section 203 is three years. Cal. Civ. Proc. Code § 338(a); Cal. Lab. Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010).

remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, L.L.C.*, 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015).  Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015).

28.    Peloton denies that any such penalties are owed to Plaintiff or any putative class members.  However, for purposes of this jurisdictional analysis only, Peloton relies on Plaintiff's allegations that the penalties are owed.  Plaintiff alleges that Peloton's "failure to pay Plaintiff and members of the Waiting Time Class all wages earned prior to separation of employment timely" was "willful," and that Peloton "intentionally adopted policies or practices incompatible with the requirements of California Labor Code §§ 201 and 202," therefore entitling them to penalties under Labor Code section 203.  Cooney Decl., Ex. F, Compl. ¶¶ 83, 85.  Plaintiff claims that "[a]ll current and former California hourly, non-exempt employees of Peloton" were allegedly denied timely final wages, including wages for "all time worked," "overtime at the proper overtime rate of pay," "premium wages for workdays," "vacation/PTO wages," "reimburse[ments of] employment-related expenditures," or pay for denied meal and rest breaks, "between four (4) years prior to the filing this action through the present." *Id.*, Compl. ¶¶ 19, 83.  Plaintiff's waiting time claim is therefore derivative of his other unpaid wage and meal and rest period claims.  Based on these allegations, it is reasonable to assume that Plaintiff will seek thirty days' wages for every putative class member that resigned or was terminated during the statutory period.  *See Crummie v. CertifiedSafety, Inc.*, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (where a plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

29.    According to Peloton records, approximately 586 full-time, non-exempt employees resigned or were terminated in California between January 3, 2019 and

Gibson, Dunn & Crutcher LLP

January 3, 2022.  Pinkston Decl. ¶ 4(e).  (Again, this represents a fraction of Plaintiff's putative class, which ostensibly includes other types of employees.  *See supra* Section II.A ¶ 11.)  The average hourly pay rate for those 586 employees was $21.  Pinkston Decl. ¶ 4(f).

30.    If, as Plaintiff alleges, non-exempt, hourly individuals who worked for Peloton during the three years preceding the filing of the action were owed wages and did not receive them, the amount in controversy with respect to the waiting time penalties claim for just full-time, non-exempt employees at Peloton who resigned or were terminated before January 3, 2022, would be approximately **$2,953,440**, calculated as follows:

| $21 average hourly rate x 8 hours per day: | $168 daily rate |
| $168 x 30 days maximum penalty: | $5,040 per employee |
| Amount in controversy for waiting time penalties, based on Plaintiff's allegations ($5,040 x 586 employees): | **$2,953,440** |

31.    The amount in controversy alleged by Plaintiff on this claim alone thus exceeds $2.9 million and does not even include penalties Plaintiff may seek on behalf of temporary, seasonal, or part-time employees, which would further increase the amount put in controversy by this claim.

**2.    Plaintiff's Claim for Alleged Violation of Labor Code Section 226 Places Another $1.4 Million in Controversy**

32.    Plaintiff alleges in his Third Cause of Action that Peloton did not "provide accurate itemized wage statements," in compliance with Labor Code section 226. Cooney Decl., Ex. F, Compl. ¶ 44.  Plaintiff alleges that, among other things, the wage statements did not "reflect[] the correct number of hours worked and the applicable hourly rates," including "non-discretionary pay and worked overtime," as well as the "total hours worked for each pay period whenever overtime wages" were earned.  *Id.*, Compl. ¶ 45.  On this ground, Plaintiff seeks, among other things, "penalties" pursuant to Labor Code section 226.  *Id.*, Compl., Prayer for Relief.

33.     Under section 226(e)(1), an employee suffering injury as a result of an intentional failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."   Cal. Lab. Code § 226(e)(1).

34.     Peloton denies that any such penalties are owed to Plaintiff or putative class members.   However, for purposes of this jurisdictional analysis *only*, Peloton relies on Plaintiff's allegations that the penalties are owed.   Plaintiff alleges that Peloton failed to provide accurate wage statements because of its alleged underlying failures to, among other things, include "non-discretionary pay" and "overtime" "into the regular rate of pay for purposes of paying overtime[.]"   Cooney Decl., Ex. F, Compl. ¶ 45.   Plaintiff's wage statement claim is therefore derivative of his other claims for unpaid wages, including overtime wages.   Based on those allegations, it is reasonable to assume for the purposes of this jurisdictional analysis only, that all class members received inaccurate wage statements each pay period.   *See Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015) (concluding it is appropriate to use 100% violation rate for wage statement claim where the claim is derivative); *Soto v. Tech Packaging, Inc.*, 2019 WL 6492245, at *7 (C.D. Cal. Dec. 3, 2019) (same).[2]

35.     Peloton's practice during the one-year period prior to the filing of the action[3] has been to issue paychecks to full-time, non-exempt employees on a bi-weekly basis (every second week).   As such, a pay period includes two weeks.   Pinkston Decl. ¶ 4(i).

---

[2]  Peloton does not concede that penalties under section 226 are recoverable for a derivative theory like the one Plaintiff advances here.   *See Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 644 (9th Cir. 2020).

[3]  The statute of limitations for this claim is one year.   Cal. Civ. Proc. Code § 340(a).

36.     During the one-year period prior to the filing of the action, Peloton employed approximately 778 full-time, non-exempt employees in California. *Id.* ¶ 4(g). These employees worked an aggregate total of 14,511 pay periods from January 3, 2021 and January 3, 2022. *Id.* ¶ 4(h). Based on Plaintiff's allegations, the amount in controversy with respect to Plaintiff's Third Cause of Action is approximately **$1,412,200**, calculated as follows:

| | |
|---|---|
| Penalty for initial pay period for each employee (778 initial pay periods x $50): | $38,900 |
| Penalty for each subsequent pay period for each employee (13,733 subsequent pay periods (14,511-778) x $100): | $1,373,300 |
| Amount in controversy for section 226 claim, based on Plaintiff's allegations: | **$1,412,200** |

37.     The amount in controversy alleged by Plaintiff on this claim thus conservatively places at least $1.4 million in controversy and this calculation does not even include any penalties allegedly owed to (1) part-time employees or (2) full-time, non-exempt employees who worked after January 3, 2022.

### 3.     Plaintiff's Allegations Regarding Meal and Rest Periods Places Another $694,411.20 in Controversy

38.     Plaintiff alleges that Peloton failed to ensure that employees "had the opportunity to take and were provided with off-duty meal periods" and "rest periods," and instead had a "policy and procedure" of "regularly" "fail[ing] to pay the meal period premium" and "premium compensation for missed rest periods" in violation of California Labor Code sections 226.7 and 512. Cooney Decl., Ex. F, Compl. ¶¶ 32, 33, 37. Accordingly, Plaintiff alleges that he and other putative class members are "entitl[ed] to recovery . . . for the unpaid balance of the unpaid premium compensation" for allegedly missed meal and rest periods. *Id.*, Compl. ¶¶ 35, 42.

39.     Under Labor Code section 226.7, "if an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular

rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c); *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 864–65 (2021).

40. During the three-year period prior to the filing of the action,[4] Peloton employed approximately 1,065 full-time, non-exempt employees in California. Pinkston Decl. ¶ 4(b). These employees worked an aggregate total of 27,556 pay periods from January 3, 2019 and January 3, 2022, and were paid at an average hourly rate of $21.00. *Id.* ¶¶ 4(c)–(d).

41. Plaintiff failed to specify in his First Amended Class Action Complaint how many meal periods or rest breaks he claims he and other putative class members actually missed and for which he claims they were not properly compensated. However, Plaintiff alleges the existence of a systemic failure on the part of Peloton to schedule employees in a way that would permit him and others to take their meal periods and rest breaks uninterrupted. Based on these allegations alone, Peloton assumes a conservative violation rate of just *one* non-compliant meal period and *one* non-compliant rest period per two-week pay period, at the average hourly rate of $21. *See, e.g.*, *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding a once-per-week violation rate reasonable where the complaint alleged that the defendant "regularly and consistently" provided non-compliant meal periods); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (noting that a one-day-per-week violation rate is reasonable where plaintiffs had alleged a policy or practice).

42. Peloton's assessment is even more conservative, however, because Peloton bases its calculation on an assumption that a combined premium of $42 per pay period ($21 for one non-compliant meal period and $21 for one non-compliant rest period)

---

[4] The statute of limitations for an action under Labor Code section 226.7 is three years. Cal. Civ. Proc. Code § 338(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007).

Gibson, Dunn & Crutcher LLP

would be owed for only 60% of the more than 27,000 pay periods in the alleged class period.

43.     Therefore, while denying liability altogether and for jurisdictional purposes only, Plaintiff's meal and rest period claims place at least **$694,411.20** in controversy, calculated as follows:

| | |
|---|---|
| Conservative estimate of meal period and rest break penalties for each employee in each pay period (2 x $21 average hourly rate): | $42 |
| Aggregate number of pay periods worked: | 27,556 |
| Conservative estimate of pay periods in which an alleged violation occurred (27,556 x 60%): | 16,533.6 |
| Amount in controversy for meal period and rest break claims ($42 x 16,533.6): | **$694,411.20** |

44.     This assumption is conservative, especially in comparison to assumptions frequently found reasonable in meal and rest break cases where plaintiffs allege "routine" or "regular" violations, because it assumes that each member of the putative class suffered a meal period violation just once per pay period (out of a possible ten meal periods owed) and suffered a rest period violation just once per pay period (out of a possible twenty rest breaks owed), and *then* assumes that a violation only occurred in 60% of pay periods.  *See Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 745–46 (9th Cir. 2016) (holding "extrapolated violation rate" of two meal period violations per week was reasonable where plaintiff stated in a declaration that he and the putative class "frequently" had breaks interrupted); *Danielsson v. Blood Ctrs. of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (finding assumption of "a 20% violation rate for meal and rest breaks during the putative class period" to be "reasonable given the allegations of a 'pattern and practice' of such violations"); *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (upholding a 100% violation rate for a meal period claim where, like here, the plaintiff alleged that the defendant "consistently" and "regularly" committed the alleged violations); *Avila v. Kiewit Corp.*,

Gibson, Dunn &
Crutcher LLP

789 F. App'x 32, 33–34 (9th Cir. 2019) (reversing remand order after finding that allegations of "frequent" and "regular" missed meal periods and rest breaks allowed the defendant to "reasonably . . . assume[] that each of the class members suffered the violations alleged").

45.    Accordingly, Plaintiff's claims for alleged meal and rest period violations place at least an additional $694,411.20 in controversy.

### 4.    Plaintiff's Request for Attorneys' Fees Places an Additional $1.2 Million in Controversy

46.    Plaintiff also explicitly seeks attorneys' fees should he recover for any of the claims in this action.  *See* Cooney Decl., Ex. F, Compl. ¶ 28 & Prayer for Relief. "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy" for CAFA purposes.  *Arias*, 936 F.3d at 922.  While Peloton reserves its right to contest any award of attorneys' fees at the appropriate time, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees in the Ninth Circuit.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'").  Plaintiff Cohen's counsel has previously settled similar class actions in California in which he received in *excess* of 25% in attorneys' fees as a part of a settlement.  *See De Bedoy v. ATN Window & Door Corp.*, 2016 WL 7647203 (Cal. Super.) (order approving wage and hour settlement that included attorneys' fees of approximately 35% of the total settlement account).  Peloton denies that any such attorneys' fees are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis *only*, Peloton relies on Plaintiff's allegations that the attorneys' fees are owed.

47.    Here, Peloton has established that the amount in controversy is *at least* **$5,060,051.20** for Plaintiff's waiting time penalties, wage statement, and meal and rest period claims alone, and Plaintiff has not indicated that he will seek less than 25% of a

common fund in attorneys' fees.  *See* Cooney Decl., Ex. F, Compl. ¶¶ 28, 46, 51, 60 & Prayer for Relief (seeking attorneys' fees).

48.     Using a 25% benchmark figure for potential attorneys' fees for Plaintiff's allegations regarding waiting time penalties, wage statements, and meal and rest periods results in estimated attorneys' fees of approximately **$1,265,012.80**, calculated as follows:

| | |
|---|---|
| Conservative estimate of amount in controversy from waiting time penalties claim: | $2,953,440 |
| Conservative estimate of amount in controversy from wage statement claim: | $1,412,200 |
| Conservative estimate of amount in controversy from denied meal and rest break claims: | $694,411.20 |
| Attorneys' fees benchmark: | 25% |
| Attorneys' fees: | **$1,265,012.80** |

**5.     Just Four of Plaintiff's Nine Causes of Action, Including Attorneys' Fees, Places More than $6.3 Million in Controversy**

49.     In summary, Plaintiff's allegations regarding a purported failure to pay timely wages upon separation of employment, failure to provide accurate wage statements, and denial of meal and rest breaks place more than $6.3 million in controversy, inclusive of attorneys' fees.   This amount-in-controversy calculation underestimates the total amount placed in controversy by Plaintiff's First Amended Class Action Complaint because it is based on conservative assumptions about Plaintiff's putative class allegations and does not account for, among other things, any waiting time penalties owed to former employees who worked part time or any recovery for Plaintiff's other claims, including failure to pay overtime (Fourth Cause of Action), failure to pay minimum wage (Fifth Cause of Action), failure to pay accrued vacation pay (Sixth Cause of Action), failure to reimburse business expenses (Seventh Cause of Action), or violation of the Unfair Competition Law (Ninth Cause of Action).

50.     Plaintiff's allegations therefore place more than the requisite $5 million in controversy.   The jurisdictional amount-in-controversy requirement is met, and removal

to this Court is proper under CAFA.

### III.   THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

51.   Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

a)   This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

b)   The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

c)   The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

d)   At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

52.   The United States District Court for the Central District of California is the federal judicial district in which the Los Angeles County Superior Court sits.  This action was originally filed in the Los Angeles County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also id.* § 1441(a).

53.   True and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Case Cover Sheet Addendum, (e) Notice of Posting Jury Fees, (f) First Amended Class Action Complaint, (g) Alternative Dispute Resolution (ADR) Information Package, (h) Notice of Service of Process Transmittal, (i) Proof of Service of Summons, (j) Initial Status Conference Order (Complex Litigation Program), (k) Minute Court Order Re: Complex Designation and Initial Status Conference, (l) Certificate of Mailing for Minute Order Re: Complex Designation and Initial Status Conference, (m) Peloton's Answer to Plaintiff's First Amended Class Action Complaint, and (n) Filing Confirmation of Peloton's Answer to Plaintiff's First Amended Class Action Complaint are attached as Exhibits A–N to the Declaration of

Megan Cooney filed concurrently herewith. These filings constitute the complete record of all records and proceedings in the state court.

54.     Upon filing the Notice of Removal, Peloton will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Dated: March 2, 2022

DANIELLE J. MOSS
MEGAN COONEY
LAUREN M. FISCHER
GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Megan Cooney*
            Megan Cooney

Attorneys for Defendant
PELOTON INTERACTIVE, INC.